UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DDC GROUP INC.,** *        | **CIVIL ACTION NO.:**_____ |
| *Plaintiff*          * | |
|                      * | |
| **VERSUS**           * | **JUDGE** |
|                      * | |
| **FIRST PRESBYTERIAN CHURCH** * | |
| **IN HAMMOND**       * | **MAGISTRATE** |
| *Defendant*          * | |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff Contractor, **DDC GROUP, INC.** ("DDC"), who alleges and states its Complaint against Defendant Owner, **FIRST PRESBYTERIAN CHURCH IN HAMMOND** ("FPCH") as follows:

### PARTIES

1. Plaintiff Contractor, DDC, is a Florida Corporation licensed and registered to do business as a general contractor in Louisiana.

2. Defendant Owner, FPCH, is a Louisiana nonprofit corporation located and domiciled in Tangipahoa Parish, Louisiana.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

4. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District and because a substantial part of the property that is the subject of this action is situated in this District.

# FACTS

5. FPCH sustained substantial damage from Hurricane IDA, which made landfall in southeastern Louisiana on August 29, 2021, one of the strongest hurricanes of record. No temporary or permanent repairs had been made at the time DDC was contacted by FPCH. FPCH received approximately $14,000.00 as a claim payment from its insurance carrier for all hurricane damage.

6. DDC was contacted after the hurricane as a result of its relationship with First Baptist Church of Hammond and DDC's contract to address that large-loss church project also arising from Ida merely one block away from FPCH.

7. Upon inspection by DDC of the FPCH it was apparent that the church structures were still sustaining substantial water intrusions subjecting the property to further damage and liability. It was further conveyed by FPCH to DDC that FPCH did not consider the claim settlement was an adequate amount, but that FPCH lacked the expertise to accurately determine, assess, and properly document the full extent of damages sustained from the hurricane, leading to its engagement of DDC.

8. As a result, the parties entered to that certain *Construction Services Contract* executed on April 8, 2022 ("Contract"), attached hereto and incorporated herein as **Exhibit "A."** The Contract delineated the obligations of the parties, wherein DDC would perform certain work subject to a Scope of Work submitted by DDC to FPCH documenting storm damages.

9. The Contract further contained terms for *Payment and Price*, *Termination (with and without cause)*, *Dispute Resolution,* and *Default,* which included contractually liquidated damages. See *Construction Services Contract* dated April 8, 2022. The contract was executed by Pastor Barry Chance and Earl R. McCullon, identified as an "elder" of FPCH.

10. Upon execution, FPCH tendered $50,000.00 to DDC in deposit per the contractual terms and DDC began performing its scope of work, which included evaluation and assessment of damages, emergency clean-up and protective measures, and mitigation of the damaged facilities (the "Project"). The Project was to encompass assessment to completion of all identified work.

11. DDC observed and provided emergency services to address severe leaking roofs, flooded buildings, falling sheetrock, and moldy environments. Due to the length of time from the hurricane to FPCH's initial outreach to DDC, DDC acted quickly and responsibly to provide emergency services to dry in roofing and dry out building structures from standing water.

12. DDC further provided cleanup and debris removal and hauling of damaged building material, along with the deployment of equipment to dry the FPCH campus' interior components and air scrubbers to purify the contaminated air to protect the inhabitants. This work was broad and extensive, given FPCH's vast, multi-building and multi-site campus.

13. Among the work performed by DDC is the following:

   a. DDC conducted through its personnel and resources the necessary assessment experts to properly evaluate the damage from Hurricane Ida.
   b. DDC and its associates conducted an extensive investigation of all of the building structures of the FPCH campus using technical and engineering industry standards.
   c. DDC further obtained cost and scope evaluations for the extensive damages observed, and causation and estimate reports necessary to properly document any claim being made by FPCH for insurable losses.
   d. DDC concluded and provided a multi-faceted, 3000+ line-item report in RFT form documenting damages in excess of One Million ($1,000,000) Dollars.
   e. DDC established communications to identify and evaluate the facts of the report to be submitted to FPCH's insurance carrier and subsequently scheduled an on-site meeting to validate the report through an in-person walk-through of the facilities with FPCH's insurer.

14. At all times pertinent herein, FPCH was not in communication with its insurance carrier; DDC was in direct communication with FPCH's insurer on its behalf and set the onsite meeting to discuss its report and evaluations. Pastor Chance was the primary Owner representative for the Project in contact with DDC. DDC performed the evaluations and assessments and coordinated the meeting with FPCH's insurance carrier to assist FPCH with substantiating its claim. That meeting was initially postponed by FPCH and rescheduled for September 7, 2022.

15. A "zoom" meeting was initiated and conducted with DDC on Thursday, September 1, 2022, by Thomas Anderson, acting for and speaking on behalf of FPCH. Heretofore, Mr. Anderson was unknown to DDC and had no involvement with DDC on the Project whatsoever.

16. DDC reasonably assumed that the September 1, 2022 meeting was being requested by FPCH to prepare for the walk-through with the insurance representative scheduled by DDC for Wednesday, September 7, 2022, in light of the upcoming Labor Day Weekend and holiday of Monday, September 5, 2022.

17. On the afternoon of Thursday, September 1, 2022, Mr. Anderson on behalf of FPCH initiated the virtual meeting and advised DDC that FPCH had held a meeting of its leadership, at which time new elections were held and that the newly elected board of FPCH desired to "go in a different direction." Upon information, the referenced leadership meeting occurred while Pastor Barry Chance was away on personal business and unaware of its occurrence, did not participate.

18. At no time prior to the September 1, 2022, meeting was there any notice issued to DDC concerning its performance or an opportunity to review and/or address any perceived concerns.

19. When DDC asked why FPCH desired to terminate the contract, Mr. Anderson declined to give any reasons for FPCH's position, other than that FPCH had hired counsel to pursue the claim for the storm damages, and that FPCH "desired to go in a different direction." Mr.

Anderson further assured DDC that FPCH would recommend DDC to contract with other clients.

20. Mr. Anderson by and for FPCH purported to unilaterally terminate the contract and further requested that DDC turn over its proprietary work product prepared under the Contract in furtherance of FPCH's insurance claim and the upcoming meeting with FPCH's insurer.

21. Mr. Anderson further requested a return of any unused portions of the $50,000 deposit, although the work DDC performed to that point far exceeded the deposit, as explained below.

22. Mr. Anderson issued correspondence after the conclusion of the September 1, 2022, stating the following:

> *Gentlemen,*
>
> *Thank you for meeting with us today and thank you for your kindnesses.*
>
> ***I wanted to confirm our discussion today wherein we advised that our church had decided to go in a different direction and ending our contract with DDC.*** *Thank you again for the grace you showed in accepting this difficult decision.*
>
> *Duane advised that he would be getting the DDC equipment tomorrow or next week. Monday is labor day and Barry is off. Duane let me know if you need me to let you in. Also, I will try to get instructions for how best Duane can transfer the Matterport data to us.*
>
> *Ken, I will inquire as to what our church plans are regarding your contract and let you know as soon as I find out. In the meantime, please email me a copy of it.*
>
> *We will await a statement from Duane setting forth the incurred expense/cost thus far against our deposit and address that upon arrival.*
>
> ***Finally, I am not sure just how to formalize the cancellation of the contract and perhaps we should wait until the aforementioned issues are fully resolved before doing so****.*
>
> *With kindest personal regards,*
>
> *Sincerely,*
>
> *Tom*

See Correspondence from Tom Anderson to DDC dated September 1, 2022 at 7:54 p.m., attached hereto as **Exhibit "B"** (**emphasis** added).

23. At the conclusion of the September 1, 2022 meeting, DDC contacted counsel to advise of FPCH's position in furtherance of its contractual rights.

24. On September 6, 2022, Mr. Anderson sent another letter to DDC stating the following:

> *Alan and Duane,*
>
> *Your [DDC'S] equipment continues to remain in our building despite having been told they would be removed. We have not heard back from either of you regarding what we had agreed upon which places us in a difficult position with regard to gaining access from two programs already paid for by our church.*
>
> ***Our church is going to have to pay for something that DDC has already done and incur duplicative expenses if the requested information is not received by close of business tomorrow.***
>
> *Please kindly respond.*
>
> *Tom*

25. DDC through counsel responded on September 6, 2022, to Mr. Anderson referencing the Contract, advising of the proprietary nature of DDC's work product, and that the Contract could not be unilaterally cancelled "without stipulated damages of a significant amount..."

26. In reply, On September 7, 2020, Mr. Anderson advised that he was "not counsel for FPC and do[es] not represent the church."

27. In further reply on September 7, 2020, Mr. Anderson explained FPCH sought to dissolve DDC's contract contemporaneous with the hiring of Chris Edwards in Mr. Anderson's law firm:

> *Mr. Miranda,*
>
> *Please allow me to explain. First, I apologize for my brief response. I did not intend it to be terse or abrupt, but I was stunned in receiving your letter following the flow our zoom meeting with your clients.*
>
> ***At Wednesday night's session meeting our session voted unanimously to seek an amicable dissolution of the contract with DDC. Following that vote, our minister stated to the session that I, along with Helen Joseph and David Danel should be the ones to contact DDC with this mission. We did so the next day in what I thought to be a very cordial and informal meeting. When asked what the reasons were for seeking to dissolve the contract by mutual consent, I responded that we were not tasked with getting into the legal reasons for our desire to end the contract. I informed your clients that the session had also voted the night before to hire Christopher Edwards to represent the church in its attempt to seek insurance claims for Ida damage.***
>
> ***At our Thursday zoom meeting we stated it was our intention to work the DDC on an amicable basis to facilitate dissolving our relationship at this time because the church had decided to go in a different direction.*** *We did request that the matterport be released to us and Mr. Blaksley told Duane to get that to us. Duane stated he would and that he planned to come over the weekend or Monday to retrieve some DDC equipment that was in our buildings.*

> *I was asked over the weekend by Mr. Edwards to inquire about getting the matterport and esx sent over as soon as possible so we would not lose more time in presenting the claim to the insurance company. Additionally, we did not wish to hire someone else to conduct the same measures that DDC had recently performed. It was simply a practicality and there was never a demand made by me as was stated in your letter. Also, you are correct that your assumption that I requested a copy be sent to my law firm is erroneous. I did not do that. I did ask that an esx ( whatever that is) be sent to Chris Edwards who is representing the church as he had asked me to do.*
>
> ***Mr. Edwards is a partner in the law firm that I am "of counsel" with. I have no salary position with the firm and am not on the payroll. I have no pecuniary interest in the Ida claim by the church and abstained from all voting on the session when it came to hiring counsel.*** *I have been practicing law here for 46 years and understand fully what it means to declare that I was or am acting as a legal representative to a client. I was not ever acting as a legal representative in this matter nor do I intend to be.*
>
> *Mr. T. Jay Seale was the church's lawyer who advised the church in the contract negotiations with DDC. It was and continues to be the church's position to act in good faith in seeking an amicable mutual consent to go our separate ways with DDC. I am copying both Mr. Edwards and Mr. Seale. I am also copying Helen Joseph and our church elder and CPA, David Danel who attended the zoom meeting with us.*
>
> *I expect Mr. Edwards or Mr. Seale will reach out to you or your firm tomorrow.*
>
> *I do apologize for my part for any misunderstanding.*
>
> *Thank you and best regards,*
>
> *Tom*

See email chain to/from Tom Anderson and undersigned on September 6, 2022, at 8:04 p.m. and 9:32 p.m., attached hereto and incorporated herein as **Exhibit "C"** (**emphasis** added).

28. In subsequent discussions between counsel for DDC and FPCH, amicable demand was made to honor the contractual terms and agree to pay the damages called for therein. However, to date, FPCH through counsel has only agreed to only the following: "As I have said in our conversations, First Presbyterian Church agrees that DDC should be paid *whatever* sums are approved by the carrier for services supplied and billed by DDC."

29. FPCH has requested sit downs and mediation without first meaningfully responding to DDC's demand (below) or the remedies stipulated in the Contract. Since September 1, 2022, FPCH has acted unilaterally with disregard to and to the detriment of DDC's contractual rights.

## COUNT ONE—BREACH OF CONTRACT

30. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

31. DDC performed its obligations under the Contract, without any notice or written objection from FPCH of any concerns regarding its performance. To date, there has been no notice of noncompliance under the Contract on the part of DDC, with any specificity by FPCH.

32. As a result of FPCH's unilateral actions regarding the Project and its obligations under the Contract, DDC has incurred losses and damages in an actual and estimated amount well in excess of $75,000, exclusive of interest and costs, as described in the demand discussed below.

**WHEREFORE**, on Count One, DDC prays for entry of a judgment in its favor and against FPCH in an amount in excess of $75,000, exclusive of interest and costs, as such amount may be proved at the time of trial, together with interest, costs, attorneys' fees, stipulated damages, and such other and further relief as the Court may deem appropriate.

## COUNT TWO—QUANTUM MERUIT

33. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

34. From about April 8, 2022 until the present, at the specific instance and request of Owner and in reasonable reliance on Owner's promise to pay Contractor the reasonable value thereof under the Contract between the parties, Contractor performed work and furnished labor, services, materials and equipment to defendant including evaluation, assessment, protective work and mitigation measures in relation to the damages sustained at FPCH's facilities from Hurricane Ida.

35. Such labor was performed and such materials were provided to be used and were actually used in mitigation and construction of FPCH's facilities under the Contract.

36. The exact reasonable value of the work performed and labor, services, materials and equipment supplied by plaintiff for the Project that remains due, owing or unpaid by Owner is **$172,855.01,** excluding contractually stipulated damages regarding DDC's unperformed work.

37. Contractor has made demand upon Owner for payment of the reasonable value of said labor and materials, but Owner has failed and refused and continues to fail and refuse to pay that sum.

**WHEREFORE**, on Count Two, Contractor prays for entry of a judgment in its favor and against Owner in an amount of $172,855.01, far in excess of $75,000, exclusive of interest and costs, and exclusive of contractually stipulated damages that may be proved at the time of trial, together with interest, costs, attorneys' fees, and such relief as the Court may deem appropriate.

## COUNT THREE—DECLARATORY JUDGMENT

38. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

39. There is an actual controversy between Contractor and Owner regarding the rights of the parties following the attempted unilateral cancellation and dissolution of the Contract and the stipulated damage provisions contained therein following an event of *Termination without cause.*

**WHEREFORE**, on Count Three, Contractor prays for the entry of a judgment in its favor declaring the rights and obligations of the parties and FPCH's breach of same, together with such other and further relief as the Court deems appropriate.

## COUNT FOUR – FRAUDULENT MISREPRESENTATION

40. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

41. At all material times before executing the *Construction Services Contract*, Owner falsely and intentionally misrepresented to Contractor its intention to honor the provisions of the Contract to

be primarily liable for the Contract Price and payment thereof, regardless of the receipt of insurance proceeds, and to allow DDC to complete the entire scope of work of the Project. Such concealments and nondisclosures were material to DDC's decision to enter into the Contract.

42. FPCH knew that these representations were false. Owner, with actual knowledge, intentionally and falsely made these material representations to DDC with the intent that DDC would rely upon said representations, would act in accordance with such reliance, and would commit finite resources, equipment and labor to the Project at the loss of other projects and revenues arising therefrom. Alternatively, Owner made these false representations with such reckless disregard for the truth that knowledge of the falsity of the representations can be imputed to it.

43. DDC has incurred damages as a direct and proximate result of and in reliance upon the false representations made by FPCH.

**WHEREFORE**, on Count Four, DDC prays for entry of a judgment in its favor and against Owner for: (1) rescission of the Contract and restitution to place DDC in status quo ante; (2) contractually stipulated damages in an amount of not less than provided in the agreement concerning termination without cause, which shall be proven at trial; (3) payment of all costs associated with this action; (4) payment of reasonable attorneys' fees; (5) pre- and post-judgment interest permitted by law; and (6) such other and further relief as this Court deems proper.

### COUNT FIVE—FRAUDULENT CONCEALMENT OR NONDISCLOSURE

44. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

45. At all times pertinent and while under contract with DDC, FPCH did knowingly conceal and fail to disclose its efforts to undermine, breach, and unilaterally dissolve the *Construction*

*Services Contract* that FPCH entered into with DDC, to the detriment of DDC through loss of other business opportunities and lost profits. Such concealments and nondisclosures were material to DDC's decision to enter the Contract and to its ability to perform under the Contract.

46. FPCH intentionally and/or with actual malice and/or actual knowledge, concealed material facts from DDC, including but not limited to its intention not to fulfill its obligations to pay DDC for the work performed, and its further intention to breach the Contract to avoid DDC from completing the Project and receiving the revenues and profits due and owing therefrom.

47. Owner's concealment and failure to disclose were made with intent to deceive DDC. FPCH knew that if it disclosed its intention to unilaterally dissolve the Contract without permitting DDC to perform the work it was contracted to perform to completion, then DDC would not have entered into the Contract in the first place.

48. DDC reasonably and justifiably relied upon FPCH's concealment and nondisclosures of material facts, and acting on such reliance, agreed to enter into the Contract while foregoing other construction projects available to DDC at that time.

49. DDC has incurred damages as a direct and proximate result of FPCH's concealment and nondisclosure.

**WHEREFORE**, on Count Five, DDC prays for entry of a judgment in its favor and against FPCH for: (1) rescission of the Contract and restitution to place DDC in status quo ante; (2) contractually stipulated damages in an amount of not less than provided in the agreement concerning termination without cause, which shall be proven at trial; (3) payment of all costs associated with this action; (4) payment of reasonable attorneys' fees; (5) pre- and post-judgment interest permitted by law; and (6) such other and further relief as this Court deems proper.

## COUNT SIX—NEGLIGENT MISREPRESENTATION

50. The allegations set forth in the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

51. At all times during the negotiations and before execution of the Contract, as well as through the duration of the Project, FPCH and its counsel were given the opportunity to review the Contract and understand the terms and conditions therein. FPCH executed the Contract. During this time, FPCH on no occasion provided DDC with any written notice whatsoever regarding any issue arising from DDC's performance of the Contract and no indication or justification that FPCH was seeking to hire counsel to advance its insurance claim, while it was within DDC's scope to evaluate, support, and substantiate that claim, and was being performed without issue, before the September 7, 2022 virtual meeting and FPCH's unilateral attempt to dissolve the Contract.

52. DDC reasonably and justifiably relied upon FPCH's negligent representations and acting on such reliance, entered into the Contract.

53. DDC incurred damages as the direct and proximate result of FPCH's negligent misrepresentations.

**WHEREFORE**, on Count Six, DDC prays for entry of a judgment in its favor and against FPCH for: (1) rescission of the Contract and restitution to place DDC in status quo ante; (2) contractually stipulated damages in an amount of not less than provided in the agreement concerning termination without cause, which shall be proven at trial; (3) payment of all costs associated with this action; (4) payment of reasonable attorneys' fees; (5) pre- and post-judgment interest permitted by law; and (6) such other and further relief as this Court deems proper.

## COUNT SEVEN – PETITION ON OPEN ACCOUNT

54. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

55. On October 2, 2022, following the conduct of FPCH in relation to the September 1, 2022, zoom meeting and subsequent actions in breach of the Contract, DDC issued to FPCH through its counsel, its *Demand on Open Account, La. R.S. 9:2781; Exercise of Contractual Rights; Enforcement of Obligations of First Presbyterian Church of Hammond for Breach of Contract under Construction Services Contract*. See October 2, 2022 correspondence attached hereto and incorporated herein as Exhibit "D."

56. Therein, DDC demanded payment for the work performed in the amount of **ONE HUNDRED SEVENTY-TWO THOUSAND EIGHT HUNDRED FIFTY-FIVE AND .01/100 ($172,855.01) DOLLARS** plus contractually stipulated 20% of the Total Scope and Estimate assessed by DDC totaling $2,546,035.06, that was to be performed by DDC prior to FPCH's breach of the Contract, which 20% equates to the amount of **FIVE HUNDRED NINE THOUSAND TWO HUNDRED SEVEN AND .01/100 ($509,207.01) DOLLARS**, for a total amount due in the amount of **SIX HUNDRED EIGHTY-TWO THOUSAND SIXTY TWO AND .01/100 ($682,062.02) DOLLARS** due and owing to DDC.

57. DDC requested a formal response to its demand on or before October 10, 2022, which response did not include acknowledgment of the debt or other than that FPCH would agree to pay what was reasonably paid for DDC's work by FPCH's insurer.

>    ***WHEREFORE***, on Count Six, DDC prays for entry of a judgment in its favor and against FPCH for: (1) contractually stipulated damages in an amount of not less than provided in the agreement concerning termination without cause, (2) payment of all costs associated with this

action; (3) payment of reasonable attorneys' fees; (4) pre- and post-judgment interest permitted by law; and (5) such other and further relief as this Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff DDC Group, Inc., prays that this Complaint be deemed sufficient, filed and served upon Defendant, First Presbyterian Church in Hammond, and that the relief prayed for in Counts One – Seven be granted, including but not limited to the following:

1. An award of damages in the initial amount of $172,855.01 for work actually performed and unpaid;

2. A judgment declaring the rights of the parties under that certain Construction Services Contract entered into and executed on April 8, 2022;

3. Contractually stipulated damages in an amount of not less than provided in the agreement concerning termination without cause (calculated to date as $509,207.01, as of demand) for a total amount due of $682,062.02, to date, and accruing;

4. Payment of all costs associated with this action;

5. Payment of reasonable attorneys' fees;

6. Pre- and post-judgment interest permitted by law; and

7. Such other and further relief as this Court deems proper.

Respectfully submitted,

CHEHARDY SHERMAN WILLIAMS
MURRAY RECILE STAKELUM &
HAYES, LLP


/s/ John D. "Dan" Miranda
PATRICK K. RESO          #20583
JOHN D. MIRANDA          #31265
111 N. Oak Street, Ste 200
Hammond, LA   70401
985-269-7220 (o)
985-269-7224 (f)
dm@chehardy.com
Counsel for Plaintiff, DDC Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, I electronically filed a copy of the above and foregoing Complaint with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all parties in these proceedings.

/s/ John D. "Dan" Miranda
**JOHN D. MIRANDA**